SLINGER v. MUSKEGON MOTOR SPECIALTIES CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LOSS OF EYE—DISABILITY—AMENDING AWARD.

Where claimant, while in defendant's employ, received an injury to his left eye, and an agreement to pay compensation during disability was entered into, and on recovery from the lesion claimant was unable to see as well as he should have done, and an examination disclosed that he was suffering from a constitutional disease which caused his largely impaired vision, he having only about one-fifth vision in his right eye, and about one-fortieth in the left, on petition of defendant to the industrial accident board to be relieved from the payment of further compensation, the board should have made an award under the workmen's compensation act based upon the loss of one eye only, since the impaired vision of the left eye, which was practically the entire sight, was caused in part at least by the injury, but no injury to the right eye was ever received in defendant's employ.

Certiorari to Industrial Accident Board. Submitted January 8, 1918. (Docket No. 1.) Decided June 3, 1918.

Richard Slinger was injured while in the employ of the Muskegon Motor Specialties Company and entered into an agreement for compensation during disability: On petition of defendant and the Zurich General Accident & Liability Insurance Company, Limited, insurer, to be relieved from further payments. From an order denying the petition, defendants bring certiorari. Reversed, and remanded.

*Kerr & Lacey,* for appellants.

*Galpin & Broek,* for appellee.

BROOKE, J. On August 17, 1915, claimant, while in the employ of the appellant removing refuse from a

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

tank attached to a camgrinder, received an injury through the lodgement of a foreign substance in his left eye. The right eye was not at that time injured, but by reason of an injury to the right eye received when a small boy the sight of that eye was not so good as the sight in his left eye. Claimant received immediate medical attention, the foreign substance being removed from the left eye. Due to the injury, however, an ulcer formed upon the left eye resulting in what is termed keratitis. The record discloses that the injury to the left eye was external and did not affect in any way the deeper structures of the eye. Continued treatment effected a cure of the lesion in the left eye, but a scar remained which interfered to some extent with vision in that eye. Shortly after the injury an agreement to pay compensation during disability at the rate of $5.50 per week was entered into by the parties and payments were made thereunder from October 9, 1915, to May 27, 1916. Upon recovery from the injury claimant was unable to see as well as, in the opinion of the attending oculist he should have done. Careful examinations of the plaintiff's eye were made by at least three oculists under the influence of medication and produced dilatation and they assert they found conditions in the back of the eye that the injury to the left eye had nothing to do with, and concluded that the claimant was suffering from some constitutional disturbance which caused his largely impaired vision. They recommended that an examination of the claimant's blood be made and the Wassermann test for syphilis be applied by Dr. Brotherhood. This was done with the result that the test gave a four plus positive reaction for the presence of syphilis. While the physicians admitted that the failure of the Wassermann test to show a positive reaction does not certainly indicate the absence of syphilis, they seem to agree that when the test shows a posi-

tive reaction the presence of the disease cannot be doubted. Based upon the unsatisfactory results of the lengthened treatment accorded claimant and the blood test, respondent concluded that claimant's present condition is attributable not to the injury received on August 17, 1915, but to the constitutional disorder above indicated, thereupon and on May 26, 1916, a petition to the industrial accident board was filed by the respondent praying to be relieved from the payment of further compensation or for such other and further relief in the premises as was just and proper. Upon the hearing of this petition the facts above narrated were made clearly to appear through the claimant's own testimony that he never received any injury to his right eye while in respondent's employ and all the physicians who spoke upon the subject testified that the present impairment of vision in his right eye was in no wise attributable to the injury to the left eye. The prayer of the petition was denied by the board and this order of denial is now reviewed in this court by the respondent who claims that there is no testimony in this record which would warrant the board in compelling the payment of the agreed compensation during a period of disability caused not by the injury, but by a constitutional disease.

As nearly as we can gather the facts from this record, claimant now has about one-fifth vision in his right eye and about one-fortieth of normal vision in his left eye. The measure of vision now remaining to claimant in his left eye is so slight that we think for the purposes of the application of this act, he should be considered as having lost the sight of that eye entirely. That the present condition of the left eye is due in part at least to the injury seems clear from an examination of the evidence of Dr. Gamber, a specialist who treated claimant. He testified in part as follows:

"*Q.* Then you would not want to state positively just what his sight would have been in his left eye today if it was not for this injury?

"*A.* No; no one on earth can do so, if it had had the same treatment we would naturally suppose, if the eyes were alike previous to the injury, that they would be the same now; that is the only thing we could suppose.

"*Q.* And they are not that way, so his trouble in the left eye is attributable to the injury as compared with the right?

"*A.* In part; I can't help but look on it that it is in part due to the injury. * * *

"*Q.* There is a vast difference between the condition of his left eye and his right eye as far as responding to treatment?

"*A.* Yes.

"*Q.* That difference would be measured probably by the injury?

"*A.* Well, no other way to measure it except that, considering, of course, that you don't know just how the vision of the two eyes compared before the injury."

From an examination of the entire record we are of opinion that the board was in error in denying respondent all relief under its petition. The record is clear that claimant suffered no injury to his right eye through the accident and it is equally clear that he has lost practically the entire sight of his left eye which loss is, in part at least, attributable to the accident. The board should have made an award under the statute based upon the loss of one eye only. *Weaver* v. *Motor Co.,* 186 Mich. 588.

The award is reversed and the case remanded to the industrial accident board for further proceedings under the act.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.