LIIMATTA *v.* CALUMET & HECLA MINING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LOSS OF AN EYE TESTED BY PERMANENT LOSS OF ALL VISION—QUESTION OF FACT.

The loss of an eye, within the meaning of the workmen's compensation act, may be tested by the permanent loss of all vision adequate for industrial pursuits, and is primarily a question of fact to be determined from the testimony in the particular case.[1]

2. SAME—LOSS OF INJURED EYE—COMPENSATION.

Under the workmen's compensation act (2 Comp. Laws 1915, § 5440, as amended), an employee is entitled to compensation for the loss of an eye where an accident re-

[1]Workmen's Compensation Acts, § 92 (1926 Anno), § 114 (1926 Anno).

On award of compensation for loss or impairment of eyesight within workmen's compensation acts. see notes in 8 A. L. R. 1324; 24 A. L. R. 1466.

ceived in the course of his employment necessitated its removal, although the vision of said eye had been impaired by a previous injury, the extent of which had never been officially determined.[2]

Certiorari to Department of Labor and Industry. Submitted October 14, 1924.    (Docket No. 88.)    Decided December 10, 1924.

William Liimatta presented his claim for compensation against the Calumet & Hecla Mining Company for the accidental loss of an eye in defendant's employ.    From an order awarding compensation, defendant brings certiorari.    Affirmed.

*Rees, Robinson & Petermann,* for appellant.

*E. F. Le Gendre (P. H. O'Brien,* of counsel), for appellee.

STEERE, J.    Defendant seeks review by certiorari and reversal of a decision by the department of labor and industry awarding $14 per week for 100 weeks to plaintiff for the loss of his left eye, caused by an industrial accident which befell him on March 31, 1923, while in defendant's employ.    The accident occurred while plaintiff was working as a riveter in defendant's machine shop engaged in center marking rivets on a skip, when a piece of steel flying from a rivet struck him in the left eye, injuring it so severely that it was found necessary to remove it.    That eye had been injured before by a similar accident, in 1906, prior to the enactment of our workmen's compensation law.    He was then working as a riveter "chipping a skip hub" when a flying fragment of steel struck and wounded the same eye.    It thereafter healed but with the vision seriously impaired, apparently by a scar over the pupil, to an extent rendering it impossible for him

[2] Workmen's Compensation Acts, § 92 (1926 Anno).

to see with that eye anything directly in front of him. He stated, however, that by turning his head sideways he got light as plainly as with his right eye and could see with it to distinguish a man from a woman and know who they were, and to recognize other things moving across the shop while he was working at his anvil; but after the injury did not see with it to do his work. Asked if he thought he could have done his work if he had not had his right eye he said that he never had tried it but thought "it would be pretty hard for me to work with that (the left) eye."

When he suffered the second injury in question here defendant furnished him proper hospital care with surgical service and reported the case to the commission as a compensable accident, thereafter tendering him full compensation for the period of his disability —until he was able to resume his employment at full wages; but denied liability for loss of an eye, apparently on the ground that he had previously lost the useful vision of the eye and could not lose it again within the meaning of the workmen's compensation act, his ability to earn full wages in the same employment being unaffected by that accident.

Plaintiff refused to accept the compensation offered and pressed his claim before the commission for full compensation for the loss of an eye as provided for in section 10, part 2, of the workmen's compensation act (2 Comp. Laws 1915, § 5440, as amended by Act No. 64, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 5440]). Arbitration proceedings were had as the law provides, resulting in an award of full compensation as stated, which was affirmed on appeal to the commission.

Appellant's counsel say in their brief:

"It is the contention of the defendant that the case of *Collins* v. *Albrecht Co.*, 212 Mich. 147, controls the instant case, while plaintiff and the department of labor and industry hold that the case of *Purchase* v.

*Refrigerator Co.,* 194 Mich. 103, is decisive of this issue. * * * That the facts here more nearly resemble those of the *Purchase Case* in that the eye in question had been previously injured but insists that both the *Purchase Case* and *Collins* v. *Albrecht Co.* should be controlled by the same test and that both cannot be a correct statement of the law. In the *Purchase Case* claimant lost the sight of an eye which had previously been injured so that he could only distinguish light and see approaching objects. In the *Collins Case* claimant could get around the city, read signs and locate offices, but his vision was insufficient to enable him to work at his trade. The test which determines the loss of an eye should be the same in all cases regardless of the previous condition of the eye. At the date of the accident in each case claimant either had or had not an eye within the meaning of the statute. If both cases are held to be correct statements of the law, the claimant in the *Collins Case* might suffer another injury to his eye and by relying on the doctrine of the *Purchase Case* recover again for the loss of the same eye."

For plaintiff it is contended that there are no distinguishing facts between the two cases and that both well support the award for loss of an eye under the schedule provision of section 10, part 2, of the workmen's compensation law, although the facts in the *Purchase Case* run more closely analogous with those in the instant case.

The eye is an organ of the body which furnishes the mechanism by which the sense of sight or faculty of vision is exercised. When it ceases to function for that purpose it is in common understanding lost, although the organ may yet remain. Such unquestionably is the purport of our brief statutory provision which fixes compensation "for the loss of an eye" in an industrial accident without any qualifying provisions as to percentage of sight left or condition of the other eye, except by another and distinct provision in the schedule that the loss of both eyes shall constitute total and permanent disability. As the statute

now stands an employee who suffers the loss of a single eye in an accident is only entitled to the compensation fixed for loss of an eye, even though by previous loss of the sight in the other eye he becomes totally incapacitated (*Weaver* v. *Maxwell Motor Co.*, 186 Mich. 588 [L. R. A. 1916B, 1276, Ann. Cas. 1917E, 238]). This rule is recognized in the *Purchase Case* and the fact is again emphasized that in these industrial accident cases the board, or commission, administers a special law by which that body and the courts are bound.

In the *Purchase Case*, as here, the workman sustained an accidental injury to an eye which had been previously injured, to an extent that the vision was largely lost. The remaining sight was "just enough to distinguish daylight from dark" and see approaching objects. There, as here, the injury under consideration was so serious as to necessitate removing the eye, but when the wound healed the workman with his remaining good eye could do the work he had engaged in when injured, and earn the same wages he received before the injured eye was removed. As applied to such a situation, the court said of the provision for "loss of an eye,"—

"It has not specified a normal eye, although it may be concluded that the law refers to an eye which performs in some degree the functions of a normal eye. * * * Claimant has lost an eye, although an infirm one. It was not wholly useless as an eye. * * * As a result of the injury, there was disability, and the disability is 'deemed to continue for the period specified, and the compensation so paid for such injury shall be as specified.' 2 Comp. Laws 1915, § 5440."

In the *Collins Case* the workman had previously lost the sight of his left eye but had good vision with his right eye and was working at his trade as a carpenter when a flying nail struck and seriously injured his

good eye, so seriously impairing its vision that he could no longer follow his calling. The board found he had lost 75 per cent. of the vision of that eye by the accidental injury in issue and after he had been paid compensation by his employer for 99 weeks on the basis of the loss of an eye awarded him further compensation of $10 a week during disability which, as the injury to his eye was permanent, amounted to an award for total disability during the maximum time allowed by the act. This the court held could not be done, citing the *Weaver Case.* Finding the testimony showed a permanent loss of sight so great that the remaining vision was insufficient to enable the employee to pursue his calling, the court reached the conclusion that plaintiff had lost an eye within the meaning of the compensation law and set aside the award, remanding the case for further proceedings agreeable to the opinion.

Unquestionably the loss of an eye within the meaning of the act may be tested by the permanent loss of all vision adequate for industrial pursuits. Primarily it is a question of fact to be determined from the testimony, and it would therefore be difficult to lay down any fixed rule of law to guide the determination. In *Stammers* v. *Banner Coal Co.,* 214 Mich. 215, an award for loss of an eye was affirmed under the following facts and conclusions:

"The usefulness of the eye for all practical purposes has been lost. A percentage of vision so slight as to be cognizant of strong light only and to merely give impression of large objects and door and window openings can be of no use in industrial pursuits or any other vocation. Without the help of his other eye it would be impossible for him to work at all or to even go about the streets. The injured eye has lent no aid to plaintiff in his work since the accident."

Compensation under the industrial accident law is to be awarded in compliance with its provisions. It

seems apparent in fact and within the meaning of that law that an employee can actually lose the same eye but once. In both this and the *Purchase Case,* the previous injury to the defective eye which then impaired its vision antedated the law under which award was made for its loss in a subsequent industrial accident which necessitated its removal. The organ with some power of vision remained after the earlier accident. When the later industrial accident occurred there had not been any adjudication or official determination that the eye was lost. The instant case comes squarely under the ruling in the *Purchase Case* and under the conditions shown as to both we find no irreconcilable conflict between them and the *Collins Case.*

The award will stand affirmed and with costs to plaintiff.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.